NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION,
Appellant,

v.

PRO FOOTBALL, INC., d/b/a
Washington Redskins, et
al., Appellees.

No. 94–7111.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 24, 1995.

Decided June 27, 1995.

Jeffrey L. Kessler, New York City, argued the cause for appellant. With him on the briefs was Richard Ben–Veniste, Washington, DC.

James E. Conway, Washington, DC, appeared pro hac vice and argued the cause for appellee National Football League Management Council. Daniel L. Nash was on the brief.

Robert B. Cave, Washington, DC, argued the cause for appellee Pro Football, Inc. With him on the brief were Peter W. Tredick, John G. Roberts, Jr. and Mark J. Larson.

W. James Young, and Hugh L. Reilly, Springfield, VA, were on the brief for amici curiae Terry Orr, et al.

Ronald C. Forehand, Sr. Asst. Atty. Gen., Office of the Atty. Gen., Richmond, VA, was on the brief for amicus curiae Commonwealth of Virginia.

Before WILLIAMS, SENTELLE, and ROGERS, Circuit Judges.

SENTELLE, Circuit Judge:

Appellant National Football League Players Association ("NFLPA") appeals from a District Court order vacating as contrary to public policy an arbitrator's award in favor of the NFLPA against appellee Pro Football, Inc., d/b/a/ Washington Redskins ("Redskins") and granting summary judgment for appellees. Appellant contends that the District Court erred in concluding that the agency shop provision of the National Football League ("NFL") collective bargaining agreement violated the laws of the state of Virginia. Because we conclude that time and events have mooted the dispute before us, we decline to reach the merits of this appeal and vacate the District Court's judgment and order.

## I.

On May 6, 1993, the National Football League Players Association ("NFLPA"), acting as the sole bargaining representative for professional football players in the NFL, and the National Football League Management Council ("NFLMC"), acting as the sole bargaining representative for NFL team owners, signed a collective bargaining agreement ("CBA") which governs the employment of professional football players in the NFL for the years 1993–2000. Contained in the CBA is a standard "agency shop" provision, which requires NFL players to pay union dues or an equivalent service fee within 30 days of employment, stating:

Every NFL player has the option of joining or not joining the NFLPA; provided, however, that as a condition of employment commencing with the execution of this Agreement and for the duration of this Agreement and wherever and whenever legal: (a) any active player who is or later becomes a member in good standing of the NFLPA must maintain his membership in good standing in the NFLPA; and (b) any active player (including a player in the future) who is not a member in good standing of the NFLPA must, on the 30th day following the beginning of his employment or the execution of this Agreement, whichever is later, pay, pursuant to Section 2

below or otherwise to the NFLPA, an annual service fee in the same amount as any initiation fee and annual dues required of members of the NFLPA.

NFL Collective Bargaining Agreement, Article V, § 1. The CBA also provides that if a player has not paid proper fees within seven days of written notification of non-payment to the NFLMC, the player shall be suspended without pay by his team. Finally, "[a]ny dispute over compliance with, or the interpretation, application or administration" of the union shop provision is to be resolved through binding arbitration. NFL Collective Bargaining Agreement, Article V, § 5.

Section 8(a)(3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(3) (1988), permits employers to enter into union or agency shop agreements with unions. NLRA section 14(b) permits individual states and territories to enact right-to-work laws which outlaw such union shop agreements. 29 U.S.C. § 164(b). Virginia has enacted a right-to-work statute, Va.Code Ann. §§ 40.1–58 to 40.1–69, pursuant to that authority.

On December 17, 1993, the NFLPA sent a written notice to the NFLMC, identifying those players who had not paid proper dues and fees for 1993. On December 24, 1993, the NFLMC in turn notified the Washington Redskins that the team should suspend 37 of its players for failure to pay 1993 dues. The Redskins refused to suspend the players, asserting that Virginia's right-to-work law prohibited the club from suspending the players.

On December 24, 1993, the NFLPA filed a grievance pursuant to the CBA and requested an expedited hearing before an arbitrator. On December 27, 1993, one day before the appointed arbitrator, Herbert Fishgold, was to conduct a hearing on the matter, Terry Orr, a Redskins player, sought a temporary restraining order in the Circuit Court of Loudoun County, Virginia, arguing that the agency shop provision in the CBA violated Virginia's right-to-work law. Fishgold conducted a six-hour arbitration hearing the following day, in which the Redskins argued that the team is a Virginia employer, subject to Virginia right-to-work laws, because the club's players spend the vast majority of

their working hours practicing at Redskins Park in Loudoun County, Virginia. Consequently, the Redskins argued that it would be illegal to enforce the agency shop provision against the Redskins and the team's players. In turn, the NFLPA argued that the players' predominant job situs was the District of Columbia, where the team played at least 8 games a year. Because the District of Columbia does not have a right-to-work law, the NFLPA argued that the agency shop provision was enforceable and that the players should be suspended.

On December 29, 1993, Fishgold issued his finding, ordering the Redskins to comply with the agreement and to suspend players who failed to pay their dues or fees. Purporting to apply the Supreme Court's situs test from *Oil, Chemical and Atomic Workers, Int'l Union v. Mobil Oil Corp.*, 426 U.S. 407, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976), Fishgold found that the District of Columbia was the players' predominant job situs because the Redskins play more games—the team's *"raison d'etre"*—there than anywhere else. Thus, the arbitrator issued an award requiring the Redskins to suspend any players who failed to pay proper fees or dues. Subsequently, Judge Thomas D. Horne of the Loudoun County Circuit Court granted Terry Orr a temporary restraining order ("TRO") which enjoined the Redskins from suspending Orr. *Orr v. National Football League Players Ass'n*, 145 L.R.R.M. (BNA) 2224, 1993 WL 604063 (Va.Cir.Ct.1993). Judge Horne interpreted *Mobil Oil* contrary to Fishgold, holding that Virginia's right-to-work law applies to Orr and his teammates, who spend a vast majority of their working time in Virginia. *Id.* In response to Judge Horne's ruling, the arbitrator amended his prior award to exclude Terry Orr from the list of players to be suspended.

Following issuance of Judge Horne's order, the NFLPA filed this suit in the U.S. District Court for the District of Columbia, seeking injunctive relief and a TRO ordering the defendants, the Redskins and the NFLMC, to comply with the arbitration award. Specifically, the NFLPA sought to have the players suspended prior to the Redskins' game against the Minnesota Vi-

kings on December 31, 1993. Judge Joyce Hens Green denied the request for a TRO on December 30, 1993, finding that the NFLPA was unable to demonstrate a substantial likelihood of success on the merits. *National Football League Players Ass'n v. Pro–Football, Inc.,* 849 F.Supp. 1, 2 (D.D.C.1993). The New Year's Eve game was played without any suspensions of Redskins players. Nevertheless, the Redskins lost the game 14–9.

At the conclusion of the 1993 season, the parties continued to pursue this matter before Judge Thomas F. Hogan. The Redskins filed a counterclaim against the NFLPA seeking a declaratory judgment finding the arbitrator's award to be unlawful and unenforceable. Both parties filed motions for summary judgment, asserting that there were no genuine issues of material fact. On May 12, 1994, the District Court entered summary judgment against the NFLPA. *National Football Players Ass'n v. Pro–Football, Inc.,* 857 F.Supp. 71, 80 (D.D.C. 1994). Rejecting the suggestion that it defer to the arbitrator's views regarding the legality of his award, the District Court instead conducted *de novo* review of the arbitrator's decision "to determine whether he made an error of law that compels the defendants to violate Virginia law and public policy." *Id.* at 76. The District Court determined that the arbitrator erred in interpreting *Mobil Oil* to provide that District of Columbia law governed the legality of the union shop provision; instead, Virginia law applied. *Id.* at 80. Accordingly, the court declared Fishgold's arbitration award unenforceable as "contrary to the laws and public policy of Virginia." *Id.* The NFLPA then docketed this appeal.

Since this appeal was docketed, Terry Orr and 15 of his teammates have continued to seek broad declaratory and injunctive relief in Virginia state court. In that proceeding, the NFLPA submitted a sworn statement in support of a motion to dismiss or stay the proceeding which stated that it would no longer seek suspension of any member of the 1993–94 Redskins for failure to pay dues. In September 1994, five Redskins players moved for summary judgment in that action. The Virginia court granted that motion De-

cember 21, 1994. *See Orr v. National Football League Players Ass'n,* 147 L.R.R.M. (BNA) 2845, 1994 WL 695340 (Va.Cir.Ct. 1994). The NFLPA has petitioned the Supreme Court of Virginia for review of that decision. The Virginia Supreme Court has yet to act on the petition.

In this appeal, the NFLPA argues that the District Court applied an improper standard of review in determining that Virginia law applies to the Redskins and that, in any event, the District Court's determination that the arbitration award violates a clear public policy of Virginia was erroneous. Appellees dispute each of the NFLPA's substantive arguments and argue additionally that subsequent events have mooted this appeal. Specifically, they contend that the passage of time and the NFLPA's disavowal of the relief granted by the arbitrator moot the issues before this court. Because we agree with the appellees that the issues in this appeal have been mooted, we decline to reach the merits of appellant's arguments and vacate the judgment and order of the District Court.

## II.

■ It is well settled that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of California v. United States,* —— U.S. ——, ——, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)). Under the mootness doctrine, a case is not justiciable and must be dismissed "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever.'" *Church of Scientology,* —— U.S. at ——, 113 S.Ct. at 449 (quoting *Mills,* 159 U.S. at 653, 16 S.Ct. at 133).

To determine whether this case has become moot, we must look to the nature of relief granted by the arbitrator and the District Court. The NFLPA, in its grievance filed with the arbitrator, sought "an order that the Redskins comply with Article V of the CBA, which requires the Redskins to

suspend all Redskin players who have not paid union dues or service fees required by the CBA." Arbitrator Fishgold's subsequent award was limited to ordering the Redskins "to comply with Article V of the Collective Bargaining Agreement by suspending without pay any Washington Redskins player who has not paid his union dues or executed a dues checkoff authorization by one o'clock p.m. E.S.T. December 31, 1993." When it filed its complaint in the District Court, the NFLPA sought "an Order ... requiring the Washington Redskins and National Football League to comply with the arbitration award of December 30." The District Court, in an order dated December 30, 1993, denied the NFLPA's motion for a TRO. As a result, no Redskins players were suspended for the final game of the 1993–94 season on December 31, 1993. Subsequently, several months after completion of the season, the District Court granted summary judgment in favor of the Redskins and NFLMC and declared Fishgold's arbitration award as "unenforceable because it is contrary to the laws and public policy of Virginia." 857 F.Supp. at 80.

■ Clearly, the only relief requested by appellants was an order suspending 37 Redskins players for the final game of the 1993–94 season for failure to pay that season's union dues and fees. That relief, in fact, was granted by the arbitrator; however, the Redskins, with the blessing of the District Court, did not comply with the arbitrator's award by the December 31, 1993 deadline, and no players were suspended for the Vikings game. As a result, the only relief for which the appellants prayed and which the District Court could have granted—suspension of the Redskins players for the remainder of the 1993–94 season—became impossible to grant as a result of the playing of the New Year's Eve game against the Minnesota Vikings. At that point, the matter in dispute before the arbitrator, failure to pay fees for the 1993–94 season, could not be affected by the District Court by virtue of the limited relief sought by appellant. Thus, nothing else appearing, under the venerable mootness rule reiterated in *Church of Scientology*, it appears that we must dismiss this case as moot.

Appellant argues that several factors preserve this matter for appeal. First, NFLPA contends that the declaratory relief granted by the District Court to the Redskins will have continuing effect on the relationship between the Players Association and the Redskins and its players (and any similarly situated teams). Thus, appellant argues, this court can grant effectual relief, saving the cause from mootness, by rescinding the declaratory order. We disagree.

■ In concluding his opinion below, Judge Hogan stated that "the Court will vacate the arbitrator's award and enter a declaratory judgment finding that the award is unenforceable because it is contrary to the laws and public policy of Virginia." 857 F.Supp. at 80. Judge Hogan's opinion therefore makes clear that the only effect of the declaratory order is to render Arbitrator Fishgold's award unenforceable; it does not declare the union shop provision of the CBA unenforceable with respect to the Redskins for the remaining years of the CBA. Judge Hogan's order is consistent with the relief prayed by the NFLPA, which never requested the arbitrator or the District Court to declare the CBA enforceable against the Redskins under all circumstances. *See Hughes Aircraft Co. v. Elec. & Space Technicians, Local 1553, AFL–CIO*, 822 F.2d 823, 827 (9th Cir.1987) (arbitrators have no authority to decide issues not submitted by the parties). Consequently, this court would not alter the future relationship between the parties to the CBA by vacating the District Court's declaratory order because that order does not affect that future relationship, only an arbitrator's award regarding the 1993–94 season. That season and the time for application of the suspensions having passed, this argument does not save appellant's claim from mootness. *See Monzillo v. Biller*, 735 F.2d 1456, 1460 (D.C.Cir.1984) (where relief sought and granted by the district court expired on its own terms, there is nothing left for appellate court to review).

■ Next, the NFLPA argues that, by virtue of its submission of a claim for damages to the arbitrator after he had issued his award, it has a live claim for damages which saves this cause from mootness. While a

claim for damages can justify a decision on the merits of an appeal even where claims for equitable relief otherwise have been rendered moot, *see Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 8–9, 98 S.Ct. 1554, 1559–60, 56 L.Ed.2d 30 (1978), the NFLPA has not presented such a claim for damages. In its original grievance, the NFLPA asked simply for·"legal and related expenses"—a prayer for attorneys' fees and court costs. However, standing alone, a "request for attorneys' fees does not preserve a case which otherwise has become moot on appeal." *Monzillo,* 735 F.2d at 1463 (internal quotations omitted; citations omitted). Furthermore, its claim for contract damages was not submitted to the arbitrator until after he issued his award. Fishgold properly found that he had no jurisdiction to decide that claim, as we noted in *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Post Co.,* 442 F.2d 1234, 1238 (D.C.Cir.1971), "[O]nce an arbitrator has made and published a final award his authority is exhausted and he is functus officio and can do nothing more in regard to the subject matter of the arbitration." *Id.* (citation omitted). As a result, no live claim for damages which could save appellant's claim from mootness exists before us.

Finally, appellant contends that this controversy falls within the narrow exception to the mootness doctrine as a claim which is "capable of repetition yet evading review." *See Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). We disagree. Although the professional football season may be five to six months long, there is nothing inherent in the case that makes "the challenged action ... too short to be fully litigated prior to its cessation or expiration." *Atlantic Richfield Co. v. United States,* 774 F.2d 1193, 1199 (D.C.Cir.1985) (citation omitted). We find no reason to believe that a grievance filed at the beginning of a season could not necessarily be fully litigated before the claim became moot. As such claims "do not necessarily evade review," *City of Vernon, Cal. v. FERC,* 983 F.2d 1089, 1095 (D.C.Cir.1993), we agree with the Redskins that the claim is moot.

## III.

Having found the claim moot, we must next decide whether to vacate the District Court's order. The established practice in federal court in dealing with civil cases which have become moot is to reverse or vacate the judgment below and remand with a direction to dismiss. *United States v. Munsingwear,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). However, vacatur is an equitable doctrine, and in considering whether to vacate a moot decision, courts must take a "view of the nature and character of the conditions which have caused the case to become moot." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* —— U.S. ——, ——, 115 S.Ct. 386, 391, 130 L.Ed.2d 233 (1994) (citation omitted). Principally, courts must look at "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* The Redskins argue that vacatur is improper here because appellant disavowed all requested relief when it stated that it would no longer pursue suspensions of the Redskins players. Our opinion makes clear, however, that this cause had become moot by the passage of time even before the NFLPA's disavowal of its requested relief. *See supra* pp. 1528–29. This is more the case in which the cause has "become moot due to circumstances unattributable to any of the parties," *U.S. Bancorp,* —— U.S. at ——, 115 S.Ct. at 390 (quoting *Karcher v. May,* 484 U.S. 72, 83, 108 S.Ct. 388, 395, 98 L.Ed.2d 327 (1987)); thus, vacatur is proper here. *U.S. Bancorp,* —— U.S. at ——, 115 S.Ct. at 390.

Accordingly, it is hereby ordered that the decision of the District Court be vacated and remanded to the District Court with instructions to dismiss.