# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 10, 2021      Decided November 16, 2021

No. 17-5260

STATE OF ALASKA,
APPELLANT

ALASKA ELECTRIC LIGHT & POWER, ET AL.,
APPELLEES

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.,
APPELLEES

———

Consolidated with 17-5262, 17-5263

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:11-cv-01122)

———

*Mary Hunter Gramling*, Assistant Attorney General, Office of the Attorney General for the State of Alaska, argued the cause for appellants. On the joint briefs were *Thomas E. Lenhart*, Senior Assistant Attorney General, *Stephen J. Kennedy, Steven W. Silver, James F. Clark, III, Julie A. Weis,* and *Mark C. Rutzick.*

*Julie A. Weis* was on the joint brief for intervenor-appellants Alaska Forest Association and Southeast Conference. With her on the joint brief was *Mark C. Rutzick.*

*John L. Smeltzer*, Attorney, U.S. Department of Justice, argued the cause for federal appellees. With him on the brief were *Jeffrey H. Wood*, Acting Assistant Attorney General at the time the brief was filed, *Eric Grant*, Deputy Assistant Attorney General at the time the brief was filed, and *Leslie Lagomarcino*, General Attorney, U.S. Department of Agriculture,

*Ian Fein* argued the cause for intervenor-appellees Southeast Alaska Conservation Council, et al. On the brief were *Thomas S. Waldo*, *Eric P. Jorgensen,* and *Nathaniel S.W. Lawrence. Katharine S. Glover* entered an appearance.

Before: SRINIVASAN, *Chief Judge*, PILLARD, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge.*

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: At the heart of this protracted dispute is the "Roadless Rule," a national regulation of the Department of Agriculture's Forest Service issued in early 2001.

After years of study, the Forest Service issued this Rule prohibiting (with some exceptions) all "road construction, road reconstruction, and timber harvesting in inventoried roadless areas on National Forest System lands." 66 Fed. Reg. 3244, 3244 (Jan. 12, 2001). An environmental impact statement, assembled to comply with the National Environmental Policy Act, 42 U.S.C. § 4332(C), preceded the Rule's issuance.

In the State of Alaska there are two national forests—the Tongass and the Chugach, both of which comprise vast areas of the State.

The State of Alaska, with the support of numerous intervenors, brought an action[1] contesting the Roadless Rule's legality. The district court dismissed the case on statute-of-limitations grounds. Our court reversed and remanded. *Alaska v. U.S. Dep't of Agric.*, 772 F.3d 899 (D.C. Cir. 2014). On remand, the district court granted the summary-judgment motions of the Agriculture Department and its intervenor supporters. Alaska and the plaintiff-intervenors noted appeals.

After briefing but before oral argument, the Agriculture Department granted Alaska's request to conduct a rulemaking to determine—actually, to redetermine[2]—whether to exempt the Tongass National Forest from the Roadless Rule. *See* Roadless Area Conservation; National Forest System Lands in Alaska, 83 Fed. Reg. 44,252 (proposed Aug. 30, 2018). Our court ordered the appeals stayed pending completion of the rulemaking.

On October 29, 2020, the Agriculture Department issued a final rule exempting the Tongass from the Roadless Rule, the

---

[1] This is Alaska's second suit seeking to set aside the Roadless Rule—Alaska first challenged the Rule shortly after its promulgation. *See Alaska v. U.S. Dep't of Agric.*, No. 3:01-cv-00039-JKS (D. Alaska Jan. 31, 2001). Alaska settled this suit after the Agriculture Department agreed to issue an exemption to the Rule for the Tongass.

[2] In 2003, the Agriculture Department exempted the Tongass from the nationwide Roadless Rule. But a district court in 2011 struck down the exemption. *See* Special Areas; Roadless Area Conservation; National Forest System Lands in Alaska, 85 Fed. Reg. 68,688, 68,688-89 (Oct. 29, 2020); *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 776 F. Supp. 2d 960, 976-77 (D. Alaska 2011).

reasons for which are not our concern in this appeal. *See* 36 C.F.R. § 294.50 (2021); Special Areas; Roadless Area Conservation; National Forest System Lands in Alaska, 85 Fed. Reg. at 68,688.

Alaska's appellate brief focused entirely on the Roadless Rule's impact on the Tongass National Forest. But the Rule no longer applies to the Tongass.

A "well-settled principle of law" is this: "when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot." *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016). Finding a case "plainly moot" when the agency order has been "superseded by a subsequent . . . order" is so routine that our court usually "would handle such a matter in an unpublished order." *Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 46 (D.C. Cir. 1992). We do not follow that practice here because Alaska and the plaintiff-intervernors mount two arguments against declaring their case moot.

I.

Alaska's first argument invokes the "voluntary cessation" doctrine. This doctrine "prevent[s] a private defendant from manipulating the judicial process by voluntarily ceasing the complained of activity, and then seeking a dismissal of the case, thus securing freedom to 'return to his old ways.'" *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc); *see, e.g.*, *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000). The *en banc* court in *Clarke* added that it had "serious doubts" about whether the "voluntary cessation" rationale applied to cases like the one now before us: "it would seem inappropriate for the courts either to impute such manipulative conduct to a coordinate branch of government, or to apply against that branch

a doctrine that appears to rest on the likelihood of a manipulative purpose." 915 F.3d at 705. The court reiterated that concern in *National Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 352 (D.C. Cir. 1997).

Even though the Roadless Rule does not apply to the Tongass, Alaska believes that under the "voluntary cessation" doctrine the case is not moot because the Rule might be reimposed. Alaska points out that after the 2020 Presidential election, the Agriculture Department announced its intention to propose a new rulemaking that would "repeal or replace the 2020 Tongass Exemption" from the Roadless Rule.[3]

[3] Letter from John L. Smeltzer, Attorney, Env't & Nat. Res. Div., U.S. Dep't of Just., to Mark J. Langer, Clerk, U.S. Court of Appeals for the D.C. Cir. (Sept. 3, 2021). The letter goes on to state:

> Upon publication, the proposed rule will be subject to notice and comment proceedings. As part of such proceedings—and before promulgating any new final rule to re-impose the 2001 Roadless Rule or similar management prescriptions to the Tongass National Forest—USDA will consider environmental impact reviews under the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C), and timber market analysis under the Tongass Timber Reform Act, 16 U.S.C. § 539d, that were not available when USDA first promulgated the 2001 Roadless Road (without a Tongass Exemption). Unless and until USDA issues a new final rule for inventoried roadless areas within the Tongass National Forest, the 2020 Tongass Exemption will remain in effect and the Roadless Rule "shall not apply to the Tongass National Forest." *See* 36 C.F.R. § 294.50 (2021).

We will deal with this prospect in a moment, but before we do, a few words are in order about *American Bankers Ass'n v. National Credit Union Administration*, 934 F.3d 649 (D.C. Cir. 2019). The *American Bankers* opinion came up in oral argument. Neither Alaska nor the plaintiff-intervenors had cited the case in their oppositions to the government's suggestion of mootness. This is understandable. Alaska pitched its argument against mootness on the "voluntary cessation" doctrine. But *American Bankers* was not by any stretch a voluntary cessation case. The words "voluntary" and "cessation" do not appear in the opinion.

The district court in *American Bankers* ordered the contested regulatory provision to be "vacated and set aside." Order at 2, No. 16-2394 (D.D.C. Mar. 29, 2018), ECF No. 34. So there was nothing "voluntary" about the federal agency's ceasing to apply that provision after the order issued. *See Am. Bar. Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011); *Campbell v. Clinton*, 203 F.3d 19, 34 n.14 (D.C, Cir. 2000) (Randolph, J., concurring in the judgment); *see also Mokdad v. Sessions*, 876 F.3d 167, 171 (6th Cir. 2017).[4] It follows that the rationale for the "voluntary cessation" doctrine as stated in the *en banc Clarke* opinion and other decisions—that is, to prevent manipulation of the judicial process—did not exist in *American Bankers*. Nor did *American Bankers* hold that mere planned reinstatement suffices to avoid mootness. That appeal remained live because the district court's judgment barred the agency from its planned reinstatement of its former rule unless this court reversed the vacatur. Here, by contrast, the Agriculture

---

[4] *American Bankers* was therefore similar to a case in which the defendant discontinued his conduct after the district court issued an injunction forbidding the conduct. That obviously would not moot the case on the defendant's appeal.

Department voluntarily exempted the Tongass from the Roadless Rule and may engage in another rulemaking to adjust or repeal that exemption without any action on our part. Unlike *American Bankers*, a ruling on the merits here would be advisory.

We therefore move on to Alaska's argument that the prospect of a new regulation reimposing the Roadless Rule on the Tongass saves the case from mootness. One problem with this argument is that it contradicts not only *Akiachak Native Community* and the many cases it cites, but also *National Wildlife Federation v. Hodel*, 839 F.2d 694, 742 (D.C. Cir. 1988), a decision so directly on point that it deserves to be quoted at length:

> [T]he Secretary suspended the road regulations in their entirety . . . [and] announced his intent "to propose new regulations . . .." Consequently, the Secretary now argues that in light of the suspension, Industry's challenge is moot. Industry disagrees, asserting that the Secretary clearly intends to repropose the same regulation . . . and the issue is one "capable of repetition, yet evading review" as in *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).

> Industry's claim notwithstanding, the Secretary's withdrawal of the regulation was not a clever manipulation of regulatory and appellate procedure designed to escape review; it was merely a prudent response to the district court's remand order. Although the road reclamation requirement is certainly "capable of repetition," if and when the Secretary repromulgates [it], the regulation will be reviewable at that time. Unlike the ICC order at issue in *Southern Pacific*, [these] regulations are in no danger of expiring before

> judicial review is complete. It would be entirely inappropriate for this court to do as Industry suggests and issue an advisory opinion to guide the Secretary's rulemaking.

(citations omitted).

Here too it "would be entirely inappropriate for this court to do as [Alaska] suggests and issue an advisory opinion to guide the [Agriculture Department's] rulemaking," if there is one. *Id.* We cannot presume that any such future rulemaking will repeal the Tongass exemption *in toto*. Doing so would be inconsistent with the purpose of notice-and-comment rulemaking under the Administrative Procedure Act, *see, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 634 (D.C. Cir. 2020), and with the function of environmental impact statements under NEPA, *see, e.g.*, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 351-52 (1989); *Am. Rivers v. FERC*, 895 F.3d 32, 37-38 (D.C. Cir. 2018); *Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1263-64 (10th Cir. 2011).

Moreover, to determine whether the Roadless Rule will be reapplied to the Tongass would require us to speculate about future actions by policymakers.[5] The Rule itself has been

---

[5] No entity of the federal government can ever guarantee that a statute, a regulation, or an executive order, after being repealed or withdrawn, will not be reenacted or reissued. Courts have noted that structural obstacles to reimposing a challenged law—such as a full repeal and the need to undertake new lawmaking—generally moot a case. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (per curiam); *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10-11 (1st Cir. 2021); *Hous. Chron. Publ'g Co. v. City of League City*, 488 F.3d 613, 619 (5th Cir. 2007). Meanwhile,

controversial from its inception. *See Organized Village of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 979-81 (9th Cir. 2015) (en banc) (M. Smith, J., dissenting). New notice-and-comment rulemaking, and new environmental assessments, take time. Intervening events, such as elections or changes in policy priorities, bearing on these processes are unpredictable. The content of any future regulation is currently unknowable.[6]

If, after another round of notice and comment and a fresh environmental impact statement, the Agriculture Department retracts the Tongass exemption, that new regulation "will be reviewable at that time" in light of a new record. *Nat'l Wildlife Fed'n*, 839 F.2d at 742.[7] But in the meantime we will not take

---

actions that can be reversed at the stroke of a pen or otherwise face minimal hurdles to re-enforcement can thwart mootness. *See Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68-69 (2020) (per curiam); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017). Here, the Agriculture Department must proceed through notice-and-comment rulemaking. We will not presume that the Department is violating the law by going into that process with its mind made up. Nor will we impute voluntary cessation where nothing suggests it. *See, e.g.*, *Trump v. Int'l Refugee Assistance*, 138 S. Ct. 353, 353 (2017) (mem.); *see also Leopold v. CIA*, 987 F.3d 163, 167 & n.3 (D.C. Cir. 2021) (discussing "the dog that did not bark").

[6] *National Black Police Ass'n v. District of Columbia*, 108 F.3d at 349, in describing the "voluntary cessation" doctrine, quoted with approval *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994): "'a statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed' unless 'it is virtually certain that the repealed law will be reenacted'" (alteration in original).

[7] See also *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982), which dealt with a city ordinance amended while the case was

the "wholly novel" action of "review[ing] regulations not yet promulgated." *EPA v. Brown*, 431 U.S. 99, 104 (1977) (per curiam).

There is another reason for holding that the "voluntary cessation" doctrine does not save the case from mootness. The established law of this circuit is that "the 'voluntary cessation' exception to mootness has no play" when the agency did not act "in order to avoid litigation." *Am. Bar. Ass'n*, 636 F.3d at 648; *Oceana, Inc. v. Raimondo*, No. 20-5362, 2021 WL 4771915, at *1 (D.C. Cir. Oct. 1, 2021) (per curiam). Yet Alaska has not argued, nor could it plausibly argue, that the 2020 Tongass exemption was an effort of the Agriculture Department to manipulate the judicial process. The Agriculture Department could not have been seeking to "erase an unfavorable decision from the books." *Nat'l Black Police Ass'n*, 108 F.3d at 352. It had no "unfavorable decision" to erase. The Department prevailed in the district court. The later rulemaking that produced the 2020 Tongass exemption stemmed from Alaska's petition. In these circumstances it is senseless to suppose that the defendants acted in order to manipulate the judicial process.

## II.

Alaska's other basis for claiming that the case is not moot deals with the Chugach National Forest. In the extensive judicial proceedings after promulgation of the 2001 Roadless Rule, the Chugach has not been an object of attention. The focus instead has been on the Rule's impact on the Tongass, on

---

before the Court on writ of certiorari. The Court later explained that its decision to reach the merits rested on "the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001).

its lumber industry, and on the communities dependent on its resources. *See, e.g.*, *Organized Village of Kake*, 795 F.3d at 967-69; *Organized Village of Kake v. U.S. Dep't of Agric.*, 746 F.3d 970, 978-80 (9th Cir. 2014). Even so, Alaska now contends that the continuing application of the Rule to the Chugach keeps its case alive. We think not.

Alaska has failed to demonstrate—as opposed to allege—an injury in fact regarding the Chugach. This case reached the summary-judgment stage and, yet, the record before us is almost completely silent on what injury, if any, Alaska suffers from the Roadless Rule's application to the Chugach. Alaska points to allegations in its complaint about harms deriving from the Rule's operation in the Chugach. But it is past time for Alaska to show that it is suffering an injury in fact. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). By the summary-judgment stage, "standing turns not on allegations in the complaint but on 'specific facts' established by evidence." *Democratic Senatorial Campaign Comm. v. FEC*, 139 F.3d 951, 952 (D.C. Cir. 1998) (per curiam) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Of course, showing an injury-in-fact is a lower barrier than prevailing on the merits. *See, e.g.*, *Bell v. Hood*, 327 U.S. 678, 682 (1946); *Gerber v. Herskovitz*, 14 F.4th 500, 504, 506-08 (6th Cir. 2021). And states have greater leeway in showing standing given the "special solicitude" they receive for matters involving their "quasi-sovereign interests." *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007). Nonetheless, Alaska had to show actual harm—not merely allege it.[8] Alaska disregarded

---

[8] We will not credit the declaration of John Chris Mainsch and several other exhibits submitted in support of the appellants' opposition to the motions to dismiss, discussing the potential harm to Alaska lands emanating from the Chugach. Entertaining these

the Chugach in its post-complaint presentations to the district court and to our court.[9] Its efforts to revive those arguments against the backdrop of the Chugach therefore must fail.

* * *

Alaska's claims regarding application of the Roadless Rule to the Tongass National Forest are moot. We therefore dismiss these claims and vacate those portions of the district court's decision regarding the Tongass. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950); *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 634 (D.C. Cir. 2002).[10] We dismiss the remaining claims on appeal for lack of standing.

*So ordered.*

---

exhibits, which were not presented to the district court, would effectively be supplementing the appellate record. We decline to do this given Alaska's overall failure to maintain claims regarding the Chugach. *See Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 690 & n.2 (D.C. Cir. 2015) (rejecting a request to supplement the appellate record with evidence supporting standing in part because doing so "would undermine the district court's factfinding role").

[9] Alaska mentioned the Chugach only three times opening to this court, and only in passing.

[10] We deny defendant-intervenors' request to vacate our decision regarding the statute-of-limitations issue, *Alaska v. U.S. Department of Agriculture*, 772 F.3d 899 (D.C. Cir. 2014). That decision did not reach the merits and has no discernable effect on the merits of defendant-intervenors' claims. *See Columbian Rope Co. v. West*, 142 F.3d 1313, 1318 (D.C. Cir. 1998) (explaining that *Munsingwear* vacatur is appropriate where a party "who cannot gain direct review on appeal because of mootness, might be precluded from relitigating the issues in a future proceeding").